Louise POTTS, Appellant (Defendant below),

v.

Ruth BROWN, Appellee (Plaintiff below).

No. 3723.

Supreme Court of Wyoming.

April 18, 1969.

---

W. A. Smith, of Smith & Meyer, Lander, for appellant.

G. L. Spence, Riverton, Vincent A. Vehar, Evanston, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Justice McEWAN delivered the opinion of the court.

This is a suit by appellee, plaintiff below, for personal-injury damages arising from a collision of automobiles driven by her, and appellant, defendant below, at an uncontrolled, ninety-degree intersection in Evanston, Wyoming. The accident occurred on July 3, 1964, at 2:15 p. m., on a bright, sunny afternoon. Although the streets do not run true north-south, east-west, they will be so designated for clarity.

Plaintiff was proceeding north on Tenth Street which was 47 feet 5 inches wide and was on defendant's left. Defendant was driving west on Summit Street which is 50 feet 9 inches wide. The point of impact was in the northeast quadrant of the intersection. The speed limit was 20 miles per hour. The left front of defendant's vehicle collided with the right rear of plain-

tiff's car. Plaintiff alleged that by reason of defendant's negligence she sustained serious injuries to her head, neck, and back, and that as a result she was required to undergo major surgery and incurred hospital and medical expenses of $2000, lost wages of $1200, and demanded judgment for a total of $90,000.

The jury returned a verdict for plaintiff and assessed her damages in the amount of $16,000. Judgment was entered and defendant appeals.

Defendant's contentions that the trial court erred in permitting witnesses to testify without proper foundation as to the speed of the two vehicles, in admitting certain exhibits, in denying motions for directed verdict judgment notwithstanding the verdict and new trial, and in rejecting certain instructions will be discussed in that order.

■ As we said in Colwell v. Anderson, Wyo., 438 P.2d 448, 450, "a court has considerable discretion in passing upon the qualification of a nonexpert witness to testify as to the speed of moving objects." In that case at p. 451, we also cited 32 C.J.S. Evidence § 546(53), p. 239:

> " 'Accordingly, a witness who observed the moving object in question will be permitted to estimate its speed if he possesses some knowledge or experience, however slight, which will enable him to form an opinion. The qualification of the witness to judge accurately goes to the weight which the jury may give his testimony rather than to its competency. * * * ' "

All of the witnesses to whose testimony defendant objects possessed some experience with moving vehicles, were of reasonable intelligence, and, where they had observed the moving vehicle or vehicles, were qualified to give opinion testimony. While it may be that the witnesses' opportunities for observation were slight, this would affect the weight that may be given to their testimony by the jury rather than the competency.

The jury was instructed that it was their exclusive province to weigh and consider all evidence presented to determine the credibility of all witnesses, and that they would take into consideration the demeanor of witnesses, their apparent intelligence or lack of intelligence, their means of knowledge of the facts testified to, and the interest, if any, which a witness may have in the outcome of the trial. They were advised that they were the exclusive judges of the facts and the effect and value of evidence, and that they were the sole judges of the credibility of the witnesses and of the weight to be given their testimony.

Witness Gale Lee, 14 years of age, was near the alley on Tenth Street one-half a block north of the accident, and had a clear view of the accident intersection. He had a motorcycle license and had driven his motorcycle, which had a speedometer, on the streets of Evanston every day for two months. He knew the speed limit in the area was 20 miles per hour and had driven his motorcycle along other vehicles that were traveling within the speed limit. He had observed automobiles that he had ridden in while they were being driven within the speed limit. He had ridden in his father's automobile every day and as a result was aware of the speed of an automobile being driven at 20 miles per hour. On two occasions, he had ridden in a police car with his father who was a city policeman. He saw the accident; he turned around and saw the defendant's car coming, "looked real fast to me." He testified that plaintiff's car was almost through the intersection when defendant's car hit plaintiff's car in the rear, and that defendant's car was going faster than plaintiff's car. Lee had the defendant's vehicle in view for 45 feet prior to the collision, and plaintiff's car was in his line of vision "just real quick." He testified that plaintiff's vehicle was going 15 to 20 miles per hour and defendant's vehicle about 40 miles per hour. There was no testimony or evidence by defendant that plaintiff was traveling more than 20 miles per hour.

An accident report prepared by one of defendant's witnesses was received into evidence without objection by defendant, which report showed plaintiff's speed as 20 miles per hour before the accident. Both Penny Brown and Ruth Brown testified as to the speed of plaintiff's automobile.

Penny Brown, a 15-year-old witness, was a passenger seated in the right-front seat of plaintiff's automobile at the time of the collision. She had a beginner's permit and had been interested in driving since she was 13. She knew the speed limit in town was 20 miles per hour, and while she was practice-driving with her parents she had to keep within the speed limit. She testified that her mother, the plaintiff, was driving 20 miles per hour as she approached the intersection. She saw the defendant's vehicle when the car in which she was riding was 25 feet from the intersection and the defendant's car was 75 feet from the intersection. While she did not testify as to the speed of defendant's vehicle in miles per hour, she did testify that the defendant's vehicle traveled twice the distance that the plaintiff's vehicle traveled during the same period of time.

Ruth Brown, the plaintiff and driver of one of the vehicles, testified without objection that she was not going over 20 miles per hour at the time of the accident, and, over objection, testified that defendant was driving "40 miles per hour at least." She was 35 years of age and had driven a motor vehicle for 18 years, was aware of speed limits, and could tell if a car was going two times as fast as her car. She saw defendant's car when it was 100 feet from the intersection and her car was 30 feet from the intersection. She traveled 65 feet from the time she first saw defendant's vehicle until the point of impact. According to her testimony, the defendant's car was 70 feet from the intersection when she (plaintiff) entered the intersection.

Defendant contends that the court should not have admitted into evidence certain photos because they were prejudicial, misleading, or confusing, and cites Edwards

v. Harris, Wyo., 397 P.2d 87, wherein we said we think trial judges should always guard against the allowance of photos which tend to be confusing, misleading, or prejudicial to a litigant. Defendant points out in her brief that the photos were repetitious of other evidence, and contends that the photographs were misleading in that the pictures were taken in the winter when there was no foliage on the trees. Defendant objected to certain of the pictures taken through the windshield of plaintiff's automobile and one other car. The photos taken from the interior of the vehicles were admitted for the limited purpose of showing distances from vehicles to certain areas in the intersection. Defendant concedes that the trial judge made it clear to the jury that the photos were taken and admitted only for the limited purpose of showing distances, but contends that there is no logical explanation as to why the photos were taken from inside the automobile and then offered for the limited purpose of showing distances.

■ Defendant further argues that one of the principal issues in this litigation is the establishment of speed of the respective vehicles and their location when first seen, and that some of the photos were conceived and taken to illustrate plaintiff's testimony. This matter gives us some concern since the situation disclosed by the photographs was admittedly not identical at the time of the accident. In addition to what we have said in Edwards v. Harris, supra, courts should not permit posed photographs which simply portray a scene arranged to support the testimonial contention which the profferer seeks to advance. We also recognize that, although a trial court may caution a jury that photographs are admitted for a limited purpose, a jury in its considerations may let the photograph speak for itself. Thus a trial court, in exercising its sound discretion as to the admission of photographic evidence, should guard against this eventuality by refusing to admit such evidence if it can reasonably be said to be misleading or confusing to a jury or prejudicial to the objecting party.

■ Appellant objected to some of the photographs on the ground that "they are being introduced for the direct purpose of illustrating a theory which is, in fact, based upon directly conflicting testimony and is therefore misleading to the Jury." While this objection is meaningful and sufficiently alerted the court to the true problem, it was not made until the third photo of a series of three photographic exhibits was offered. Only general, insufficient objections were made to the introduction of the first two photo exhibits of this series of three taken from inside of vehicles. We fail to see how error could be reasonably charged to the admission of the third photo, when two photos illustrating the same theory were already in evidence without the point having been raised.

■ Defendant objected to certain of the pictures taken through the windshield, contending that they failed to show a passenger in the right-front seat, or a child "hanging" over the front seat, as was the case at the time of the accident. Two of the photos taken from inside the vehicle show the right part of the windshield and the right-front portion of the right-front door and glass, and it would appear that in these photos, if there had been a passenger in the right-front seat, such passenger would perhaps be visible. However, since the photos were admitted for the limited purpose of showing distance, whether or not there were passengers is immaterial.

■ Defendant implies that at the time of the accident there would have been foliage on the trees which would have obstructed the vision of the parties. The pertinent corner would be on plaintiff's right and defendant's left, that is, the southeast corner of Tenth and Summit Streets. There was testimony that the only trees that affected either party's vision were evergreens, and an examination of the photographs confirms this. There is

no allegation that the evergreens were any different at the time of the accident from those shown in the photographs.

An examination of the record, including all the photographs, convinces us that the trial court did not abuse its discretion in admitting them.

Defendant contends that the verdict and judgment were unsupported by the evidence and that the court erred when it denied her motions for directed verdicts at the conclusion of plaintiff's case in chief, and, upon the resting of both parties, judgment notwithstanding the verdict, or, in the alternative, a new trial.

■■■ Defendant cites testimony on behalf of and favorable to defendant which she urges us to accept rather than testimony and evidence favorable to plaintiff. However, in considering the points raised by defendant, this court must assume that all the evidence of plaintiff is true, leave out of consideration entirely the evidence of defendant in conflict therewith, and give to the evidence of plaintiff every favorable inference which may be reasonably and fairly drawn from it. Fisher v. Robbins, 78 Wyo. 50, 319 P.2d 116; Brasel and Sims Construction Co. v. Neuman Transit Co., Wyo., 378 P.2d 501. Our sole function in this regard is to ascertain if there was substantial evidence upon which the jury could arrive at its decision if it believed the plaintiff's evidence, and it is not for us to evaluate the evidence presented. Ford Motor Company v. Arguello, Wyo., 382 P.2d 886. Here, the testimony and evidence of the plaintiff is substantial, and the jury and the court were not wrong in accepting it even though this court, had it been in the place of the jury, might have reached a different verdict.

Testimony most favorable to plaintiff showed that she had entered the intersection first; the front of her car was nearly to the crosswalk on the far side of the intersection when her car was struck on the right rear by the front of defendant's automobile. Plaintiff was traveling 20 miles per hour, and defendant was traveling 40

miles per hour in a 20-mile-per-hour zone. Plaintiff left no skid marks, while defendant left 44 feet of skid marks. The jury could have well believed plaintiff's theory that, while traveling at 20 miles per hour, she was unable to protect herself from a vehicle traveling 40 miles per hour. We discussed similar circumstances in Fitzsimonds v. Cogswell, Wyo., 405 P.2d 785.

■■■ We find no reversible error in the trial court's rejection of two instructions offered by defendant, one of which read:

"You are hereby instructed that if you believe from the evidence that neither the Plaintiff, Ruth Brown nor the Defendant Louise Potts was guilty of negligence as defined in these instructions but that the collision which occurred was the result of an unavoidable accident, and [sic] your verdict should be for neither party and you shall deny damages to both the Plaintiff and the Defendant. 'Unavoidable accident' means an accident that occurred without having been proximately caused by negligence."

Defendant took exception to the rejection on the grounds that the instruction states the law applicable to the evidence in this case and that the instructions to the jury were not complete as to "unavoidable accident." Defendant makes only brief mention of this alleged error in her argument. While defendant may have been entitled to an instruction on "unavoidable accident," she fails to cite any authority or voice any convincing argument that such an instruction was necessary, and fails to show any prejudice by the failure to give such an instruction. We also note that the offered instruction is somewhat misleading in that it states "you shall deny damages to both the Plaintiff and the Defendant," inasmuch as defendant had no claim for damages against plaintiff.

■■■ Defendant also offered the following instruction:

"That during the course of this trial certain testimony and evidence was pre-

sented indicating that the Defendant, Louise Potts at the time of the accident or immediately preceding the accident was traveling in the middle or near the middle of Summit Street. This fact even if taken to be true by you bears no relationship as to whether or not the Defendant was negligent and you are hereby instructed to disregard such testimony and evidence in your decision."

Defendant took exception on the grounds that there was testimony and evidence concerning the fact that defendant's car may have been in the middle of Summit Street and that the same is a violation of the law, and whether or not defendant was in violation of an ordinance or law in this regard should not be considered by the jury in its determination of negligence. The trial court instructed the jury that plaintiff claimed the defendant drove her car negligently in that she was driving in excess of the speed limit, that she failed to keep a proper lookout and to keep her car under proper control, and that she failed to yield the right-of-way to plaintiff. Whether or not defendant was driving in the proper lane was not within the issues raised by plaintiff, and it was not necessary for the trial court to give defendant's requested instruction.

Finding no reversible error in the trial, we affirm the verdict and judgment.

Affirmed.