## BIXBY v GALLAGHER

1. EVIDENCE—ADMISSIBILITY—RELEVANCY.

   The relevancy of evidence depends upon the issue to be tried.

2. EVIDENCE—MENTAL STATUS—RELEVANCY.

   A 1958 order of a probate court declaring plaintiff's restoration to soundness of mind was neither relevant nor material to her mental status in 1968 when she was involved in the rear-end collision in suit where defendants did not claim that plaintiff was insane and that her insanity had a bearing upon her driving ability, or that she was an incompetent party, but plaintiff interjected the issue of mental illness in order to recover if she could prove mental illness had resulted from the 1968 accident; therefore, the trial court properly excluded the order as being too remote in time and not bearing on any issue raised.

3. AUTOMOBILES—NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS—OBJECTIONS.

   Three denials of plaintiff's objections to a defense witness's testimony regarding a prior automobile accident involving plaintiff and the witness were of sufficient finality to preserve for appeal the issue whether the trial court committed reversible error in allowing the witness to testify; plaintiff's failure to request a curative instruction that the witness's testimony should not be considered as evidence with respect to alleged contributory negligence did not preclude plaintiff from raising the issue of the admissibility of the witness's testimony since plaintiff sought corrective action at the trial level by repeated objections.

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 10] 29 Am Jur 2d, Evidence § 249.

[2] 41 Am Jur 2d, Incompetent Persons § 26 *et seq.*

[5, 6] 29 Am Jur 2d, Evidence § 747.

[4, 6, 9] 29 Am Jur 2d, Evidence § 315 *et seq.*

[7] 58 Am Jur 2d, Witnesses § 623 *et seq.*

[8] 58 Am Jur 2d, Witnesses § 625.

4. AUTOMOBILES—NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS.

   Evidence of prior automobile accidents is not admissible on the basic issue of negligence in a subsequent accident case.

5. NEGLIGENCE—EVIDENCE—PRIOR ACTS—INFERENCES.

   An act of negligence cannot be proven by, or inferred from, previous acts of negligence.

6. AUTOMOBILES—NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS—PREJU-
   DICE.

   A defense witness's testimony regarding a prior automobile accident involving him and plaintiff which was not counterbalanced by its materiality to the issue of plaintiff's contributory negligence in a subsequent accident was prejudicial since the jury may have found plaintiff contributorily negligent because of prior misconduct in the earlier accident.

7. EVIDENCE—COLLATERAL MATTERS—CROSS-EXAMINATION.

   Matter raised on cross-examination is collateral if the cross-examining party would not be entitled to go into the matter in chief.

8. AUTOMOBILES—NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS—IM-
   PEACHMENT.

   A defense witness's testimony regarding an automobile accident with plaintiff prior to the accident in suit was not admissible to impeach plaintiff's testimony elicited on cross-examination regarding the circumstances of the prior accident because the prior accident was a collateral issue and a party who elicits collateral matters on cross-examination cannot attempt to impeach the witness on those matters.

9. AUTOMOBILES—NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS—PAT-
   TERN OF CONDUCT.

   A defense witness's testimony regarding an automobile accident with plaintiff prior to the accident in suit was not admissible to show a marked proclivity on plaintiff's part for rear-end collisions where there was no showing that plaintiff's alleged pattern of conduct was continuous and systematic nor was there a showing that the conditions in the earlier collision were the same as the conditions in the accident in suit.

10. AUTOMOBILES—NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS—MEN-
    TAL STATUS.

    A defense witness's testimony regarding an automobile accident with plaintiff prior to the accident in suit was not admissible to show a dangerous condition or defect in plaintiff in view of her history of mental illness where defense counsel did not question

the witness concerning any aberrations in plaintiff's conduct which might be indicative of mental defects, the witness's testimony did not reveal any dangerous condition or defect in plaintiff, and defense counsel only questioned the witness about the physical aspects of the earlier accident.

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted Division 2 June 22, 1972, at Lansing. (Docket No. 11826.) Decided October 24, 1972.

Complaint by Elizabeth E. Bixby against Delores Gallagher and Inez Antcliff for damages arising out of an automobile collision. Verdict and judgment of no cause of action. Plaintiff appeals. Affirmed in part; reversed in part; remanded for new trial.

*Burwell & Shrank,* for plaintiff.

*Fraser, Trebilcock, Davis & Foster* (by *Eugene F. Townsend, Jr.),* for defendants.

Before: HOLBROOK, P. J., and R. B. BURNS and T. M. BURNS, JJ.

HOLBROOK, P. J. This case arose as the result of an automobile accident which occurred on July 18, 1968, in the 500 block of Oakland Avenue, West, City of Lansing, Michigan.

Plaintiff's account of the accident was to the effect that as she was stopped in a line of traffic on Oakland Avenue, she observed the defendant Delores Gallagher (who was operating defendant Inez Antcliff's Dodge pick-up truck) coming toward her, slipping and sliding on the wet street. Plaintiff testified that Delores Gallagher was unable to stop the truck and so defendant struck plaintiff's car in the rear.

The defendant Delores Gallagher gives a differ-

ent account of the events just preceding the accident. The defendant testified that she was proceeding in a westerly direction on Oakland Avenue in the same lane of traffic as plaintiff. Defendant stated that when she first observed the Bixby vehicle it was stopped in traffic. Defendant testified that in response to this observation, she decelerated. Next the defendant stated that she observed the plaintiff's car commence to go forward and then suddenly and unexpectedly come to an abrupt halt, thus causing the collision.

Plaintiff claims that as a result of the accident, she experienced severe physical injuries which have affected her normal life and her income-producing ability and caused much pain and suffering. Plaintiff also claims that the accident led to a mental breakdown some 1-1/2 years afterward.

The case was submitted to the jury which returned a verdict of no cause of action in favor of the defendants. Judgment for the defendants was entered and plaintiff filed her claim of appeal.

To avoid repetition, the facts which relate to the two issues raised on appeal will be discussed in conjunction with those issues.

## I.

Did the trial court commit reversible error by refusing to admit a certified copy of the "Restoration to Soundness of Mind" order of the probate court for the County of Washtenaw as offered by plaintiff?

At trial Miss Bixby testified that she had a mental breakdown in 1954 which required her to be hospitalized at Mercywood Sanitarium in Ann Arbor for a period of three months. Plaintiff also testified that after she left Mercywood she was

hospitalized at Ypsilanti State Hospital for a period of three years. Immediately following this testimony, plaintiff's counsel attempted to introduce, as plaintiff's exhibit #5, a certified copy of an order of the probate court for the County of Washtenaw which declared Elizabeth Ella Bixby to be recovered and of sound mind. The order was dated August 6, 1958. At this point, counsel for the defendants objected. The trial court sustained the defendants' objection to the introduction of the Order of Restoration to Soundness of Mind on the basis that said order was irrelevant and immaterial.

Plaintiff's attorney in his brief cites the following statute:

"A copy of any order, judgment or decree, of any court of record in this state, duly authenticated by the certificate of the judge, clerk or register of such court, under the seal thereof, shall be admissible in evidence in any court in this state, and shall be prima facie evidence of the jurisdiction of said court over the parties to such proceedings and of all facts recited therein, and of the regularity of all proceedings prior to, and including the making of such order, judgment or decree." MCLA 600.2106; MSA 27A.2106.

However, the real question in issue here is not whether a certified copy of an order of a court of record is admissible. Indeed the statute specifically acknowledges this to be correct. The real issue here is whether the particular Order of Restoration to Soundness of Mind, issued by the probate court in 1958, is relevant and material to the issue of mental status in 1968.

It is a well-settled principle of law that the relevancy of evidence depends upon the issue to be tried. *White v Bailey,* 10 Mich 155 (1862). In this case, the defendants had not claimed that the

plaintiff was insane and that her insanity had a bearing upon her driving ability. Nor had the defendants claimed that the plaintiff was incompetent to bring the action. Indeed it was plaintiff who interjected the whole issue of mental illness in order that she might recover if she could prove mental illness had resulted from the accident. In essence the trial judge properly ruled that an Order of Restoration to Soundness of Mind entered ten years before the accident in question was irrelevant and immaterial, being remote in time and not bearing on any issue raised in the case.

## II.

Did the trial court commit reversible error in allowing one Richard Dean Kimball to testify concerning an automobile accident between a vehicle driven by plaintiff and one driven by Kimball?

Plaintiff stated on cross-examination that she had been the driver in four other car accidents within four years of the accident which gave rise to this action. A reading of the transcript reveals, however, that defendants' counsel did not go into the specifics of these accidents on his first cross-examination of the plaintiff. It appears that defense counsel was merely attempting to exploit his theory that many of the injuries which plaintiff alleged to have resulted from the accident in question were really pre-existing injuries. However, when plaintiff was called once again to the witness stand later on in the trial, defense counsel did get into the cause of an accident which the plaintiff was involved in in 1967:

"*Q. [Mr. Townsend, defense counsel]:* Okay. Going back now to an accident that you were involved in in August of 1967. Do you remember that one?

"*A.* Coming up Cedar ramp?

"*Q.* Yes.

"*A.* Well, yes.

"*Q.* Yes. Now, is it true, Mrs. Bixby, that you came up and stopped, the other car came up and stopped behind you. You started forward, stopped again, it stopped again. You started forward and stopped again and it tunked you in the rear?

"*A.* No.

"*Q.* That's not true?

"*A.* No.

"*Q.* Is it true that immediately after that accident you got out of the car and ran back to the man in the other car and said 'You hit me, I am going to sue you'?

"*A.* Why, no."

Defense counsel then called Richard Kimball (the other driver in the 1967 accident) as a witness. After a few preliminaries, defense counsel asked Mr. Kimball:

"*Q.* Were you a driver of a car that was involved in an accident of August 22, 1967?

"*A.* Yes, I was."

Whereupon, plaintiff's counsel objected:

"Don't answer that. Don't answer that question. I object to the question as being wholly irrelevant and improper. We are trying a lawsuit based upon an accident occurring on July 18, 1968."

The trial judge overruled the objection as premature. However, the judge acknowledged it as a continuing objection which could be raised again at a point of relevancy. Mr. Kimball was then allowed to testify that the 1967 accident involved himself and the plaintiff and that it was a rear-end accident. At this point plaintiff's counsel reiterated his objection to Kimball's testimony as being irrel-

evant and immaterial. The court overruled the objection. Next Kimball gave the details of the 1967 accident which were unfavorable to the plaintiff. At this point plaintiff's counsel asked for a recess which the court granted. When court reconvened, plaintiff's counsel once again stated his opinion that any testimony offered by Kimball would be irrelevant and immaterial and would only raise collateral matters. Defense counsel replied that Kimball's testimony should be admitted to impeach plaintiff's testimony on cross-examination with regard to the 1967 accident. At this point the court granted another recess so that both attorneys might have time to study and clarify their respective positions. The trial judge stated:

"I will grant recess until 3:00 but I intend to make a disposition at that time without further motions."

The record reveals no further discussion of the matter and when the trial was resumed, Mr. Kimball was called back to the witness stand. Defense counsel asked no more questions and plaintiff's counsel only asked him if he was a witness to an accident which occurred on July 18, 1968. Mr. Kimball replied that he was not and he was excused.

Defendants in arguing that plaintiff has not properly preserved her objection to Mr. Kimball's testimony cited 7A Callahan's Michigan Pleading & Practice (2d ed), § 57.43, p 308–309:

"Ordinarily a ruling must be obtained, to preserve for review the objection, motion or request made in the trial court. The ruling is ordinarily made by announcement that the objection is sustained or overruled, or the motion or request is denied or granted. Objections ordinarily cannot be urged on appeal in the appellate court where no ruling thereon, or the equivalent

thereof, has been made by the trial court. An objection as to which the record shows no ruling made cannot ordinarily be considered by the appellate court on appeal."

A reading of the record shows that the trial judge overruled plaintiff's objection to Kimball's testimony on three occasions. The first denial indicated that the judge felt plaintiff's objection was premature and might be raised at a later point. The second denial came after plaintiff objected to Kimball's testimony with regard to where the 1967 accident occurred. The trial judge this time said simply "The objection is denied". Defense counsel then asked Mr. Kimball to relate the manner in which the 1967 accident occurred. Again plaintiff's counsel objected and again his objection was denied. A recess followed this. When the court reconvened, defense counsel asked no more questions of Mr. Kimball. The trial judge did say before counsel left:

"I will grant recess until 3:00 but I intend to make a disposition at that time without further motions."

We conclude that the three denials of the plaintiff's objections to the testimony were of sufficient finality. Defendants cite *Jones v New York Central R Co,* 8 Mich App 575 (1967), for the proposition that the trial court's failure to rule on a discovery motion is not tantamount to a denial of the motion and that furthermore error is waived by a party's failure to call the lack of a ruling to the trial judge's attention. However, in the case at hand, the trial court did not fail to rule on the objection. Indeed it denied it three times. In all fairness we can only view the trial judge's overruling of the plaintiff's objections as final.

We now consider whether plaintiff should have requested the trial judge to instruct the jury that the testimony as to the prior accident was not evidence with respect to her alleged contributory negligence in this case. Defendants claim that inasmuch as plaintiff did not request such an instruction she has not preserved the question for appeal unless the prejudice could not be eliminated by the cautionary instruction. *Clark v Grand Trunk W R Co,* 367 Mich 396 (1962).

Defendants on appeal claims that since plaintiff did not ask for a curative instruction or call the error to the trial court's attention, plaintiff should not now be heard on appeal. Defendants cite *Smith v Musgrove,* 372 Mich 329 (1964), as authority. In that case the Michigan Supreme Court ruled that the failure of counsel below to ask for a corrective instruction, after his objection to improper argument of counsel had been upheld, precluded the raising of the issue of improper argument on appeal. However, this case is not in point. In the instant case plaintiff's repeated objection to the alleged inadmissible testimony of Mr. Kimball were all overruled by the trial judge. Therefore plaintiff did seek corrective action at the trial level but was rebuffed three times.

Plaintiff contends that the trial court committed reversible error by allowing Mr. Kimball to testify with regard to a prior accident involving himself and the plaintiff. This prior accident occurred some 11 months before the accident which gave rise to this case. Plaintiff cites 20 ALR2d, p 1210:

"It is generally held that evidence of a driver's previous accidents is inadmissible in a civil action arising out of a motor vehicle accident, since such evidence is immaterial in the determination of the driver's negligence on the occasion in question."

Professor McCormick pointed up the competing considerations in this area when he wrote:

"Proof of other similar accidents and injuries, offered for various purposes in negligence cases, is another kind of evidence which may present for consideration the counterpulls of the probative value of and need for the evidence on the one hand, and on the other the danger of surprise, prejudice, undue consumption of time and distraction of the jury's attention from the issues." McCormick, Law of Evidence, § 167, p 350.

There is no question that evidence of prior accidents is not admissible on the basic issue of negligence in a subsequent case. 29 Am Jur 2d, Evidence, § 308, p 354. In support of this conclusion, plaintiff has cited the very recent case of *Crane v Woodbury,* 41 Mich App 11, 13–14, 18 (1972). The issue in the *Crane* case was whether the trial judge's denial of plaintiff's motion *in limine* to prohibit the introduction or admission of evidence of plaintiff's alleged improper driving conduct approximately three miles west of the accident in question constituted reversible error. The Court stated:

"The trial judge's denial of this motion constituted reversible error since the prejudicial effect of this evidence was not counterbalanced by its materiality to the issue of contributory negligence according to the plaintiff's contention.

* * *

"Testimony as to the plaintiff's prior conduct three miles west of the accident had a prejudicial effect which far outweighed the probative value of such testimony. Prejudicial effect flows from the fact that the jury may have found the *plaintiff contributorily negligent because of his prior misconduct."* (Emphasis supplied.)

The Court in the Crane case also alluded to the

following language found in the case of *People v Thompson,* 122 Mich 411, 425 (1899):

"The authorities are uniform, in this State and elsewhere, *that an act of negligence cannot be proven by, or inferred from, previous acts of negligence."* (Emphasis supplied.)

We are constrained to follow the *Crane* and *Thompson* cases and determine that the admission of the Kimball testimony was prejudicial and therefore reversible error.

Defendants in their brief concede the fact that the law is generally as stated in the foregoing quote from *People v Thompson.* However, defendants assert that the testimony as to the prior accident was admissible on three grounds: to impeach plaintiff; to show a pattern of intentional or negligent conduct by plaintiff; and to show a dangerous condition or defect in plaintiff (mental illness).

Plaintiff never testified on direct examination with regard to other, prior accidents. However, when plaintiff was cross-examined by defendants' counsel for the second time he asked her specific questions about the prior accident of August, 1967. Thus he was raising collateral matters. With regard to the test as to whether or not something is "collateral", the Indiana Supreme Court has stated in *Dotterer v State,* 172 Ind 357, 365; 88 NE 689, 693 (1909):

"The test [is] would the cross-examining party be entitled to go into such matter in chief? If not, it is collateral."

We determine that the defense counsel would not have been entitled to go into the matter of plaintiff's prior accidents in his case in chief (with no

foundational cross-examination), therefore the matter of the 1967 accident was collateral.

Defendants claim that Mr. Kimball's testimony was properly admissible in order to impeach the testimony of the plaintiff elicited on cross-examination with regard to the circumstances of the 1967 accident. However, the weight of authority is to the effect that a party who elicits collateral matters on cross-examination cannot attempt to impeach the witness on those matters. In effect counsel is bound by the answers of that witness. *Hitchcock v Burgett,* 38 Mich 501 (1878); *People v Hillhouse,* 80 Mich 580 (1890); *People v Williams,* 159 Mich 518 (1910). The specific language of the Michigan Supreme Court in the case of *People v MacCullough,* 281 Mich 15, 26 (1937), is helpful at this juncture:

"Where a witness is cross-examined on matters purely collateral, the cross-examiner may not inquire of other witnesses whether the answers given are truthful, because such inquiry would open irrelevant matters."

Therefore defendants' argument that Kimball's testimony as to the 1967 accident was admissible for impeachment purposes must fail.

Defendants also claim that Kimball's testimony was admissible to show a pattern of conduct by plaintiff, namely a marked proclivity toward collisions. In 32 CJS, Evidence, § 581, pp 710–711, it is stated:

"Evidence of a course of conduct or dealing may be admitted where pertinent to an issue in the case. Thus, when, in the opinion of the court, a course of conduct or dealing on the part of a given individual is established as to render its continuance to the time involved in the

issue probable, its existence may be used as evidence that he acted in accordance with it on a particular occasion, provided such course of conduct is shown to have been continuous and systematic, and that the conditions in the particular case are the same as, or similar to, those to which the custom is applicable."

In this case there was no showing that plaintiff's alleged pattern of conduct (getting involved in rear-end traffic accidents) was continuous and systematic nor was there a showing that the conditions in Mr. Kimball's accident were the same as those present in the case at hand, though they were somewhat similar. Therefore Kimball's testimony was not admissible as evidencing a pattern of conduct on the part of the plaintiff.

Defendants also claim that Kimball's testimony was admissible to show a dangerous condition or defect in plaintiff in view of plaintiff's history of mental illness. A reading of the record reveals that defense counsel asked no questions of Mr. Kimball concerning any aberrations in plaintiff's conduct which might be indicative of mental defects. Defense counsel merely questioned Mr. Kimball as to the physical aspects of the 1967 accident. Mr. Kimball's testimony did not point up a dangerous condition or defect in the plaintiff.

We are constrained to rule that the prejudice caused by Mr. Kimball's testimony could not have been cured by a limiting instruction to the effect that the prior accident did not constitute evidence concerning possible contributory negligence in this accident.

Affirmed in part and reversed in part and remanded for a new trial. Costs to plaintiff.

All concurred.